235 F.2d 108
 CUNEO PRESS, Inc., Plaintiff-Appellee,
v.
KOKOMO PAPER HANDLERS' UNION NO. 34, and Kokomo Printing
Pressmen& Assistants' Union No. 302, International Printing
Pressmen & Assistants' Union of North America, A.F.L.,
Defendants-Appellants, and International Printing Pressmen &
Assistants' Union of North America, A.F.L., Defendant.
 No. 11611.
 United States Court of Appeals Seventh Circuit.
 July 2, 1956.
Rehearing Denied July 30, 1956.
 
 John S. McLellan, Kingsport, Tenn., Hugh E. Reams, Kingsport, Tenn., Minter, McLellan & Tipton, Kingsport, Tenn., of counsel, for appellants.
 John K. Ruckelshaus, Indianapolis Ind., John C. O'Connor, Indianapolis Ind., Ruckelshaus, Reilly, Rhetts & O'Connor, Indianapolis, Ind., of counsel, for appellee.
 Before DUFFY, Chief Judge and LINDLEY and SCHNACKENBERG, Circuit judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 The defendant unions Nos. 34 and 302, above named,[1] have appealed from an order of the district court overruling their motion to stay proceedings in a suit theretofore filed in that court by Cuneo Press, Inc., in which said defendants and the international union above named were sued.
 
 
 2
 The following facts appear from the verified complaint filed in said suit by plaintiff:
 
 
 3
 Said action was brought pursuant to § 301 of the National Labor Management Relations Act of 1947.[2] Plaintiff, engaged in the printing business in Kokomo, Indiana, and the unions on April 10, 1953 entered into a contract providing for its employees' wages, hours and working conditions. Article XIV of said contract provides:
 
 
 4
 'Article XIV. Work Stoppage.
 
 
 5
 'Section (1) It is understood that the Union is without power to compel its members to work with nonunion employees, and any such refusal to work shall not constitute a breach of this Agreement. The parties to this contract shall undertake to avoid any lockout, strike, slow down or stoppage of work during the life of this Agreement. In case of an unauthorized stoppage, the Union and the Employer will cooperate to fix responsibility and take appropriate action, disciplinary or otherwise, to remove the cause or causes.' (Emphasis supplied.)
 
 
 6
 From January 24, 1955 to January 27, 1955, when said complaint was filed, the unions engaged in, induced, encouraged and caused the employees of plaintiff to engage in a strike or work stoppage. The officers, agents and employees of local No. 34 induced plaintiff's employees who are members of said union to cease working at the plant and to refuse to report for work 'since January 24, 1955'. The officers, agents and employees of local No. 302 engaged in, induced and encouraged all of plaintiff's employees who are members of said union to present themselves on the property and in the plant of plaintiff, but all of said employees refused to perform any work and participated in what is commonly termed a sit down strike. The unions caused said work stoppage of the entire operation of plaintiff's plant, because of their dispute with another union over certain work in that plant, amounting to not more than 1/10th of 1 per cent of the entire operations of the plant, and said work stoppage 'was and is without just cause'. Said unions are subsidiaries of the international union. The plant is primarily engaged in the publication of magazines and other periodicals which have a wide-spread national and international circulation. Said work stoppages 'have rendered plaintiff' unable to carry out its contracts with publishers, to its irreparable damage. Defendants should be enjoined from further violating said contract, particularly article XIV thereof. Said contract provides for arbitration in the event of a dispute, but, notwithstanding such contract provision, the defendants 'have refrained and refused' to arbitrate alleged grievances.
 
 
 7
 Plaintiff asks damages, a temporary restraining order and an injunction from further violation of said contract.
 
 
 8
 Upon the filing of the suit in the district court, the work stoppage ended. In oral argument here, it was stated and not denied that the stoppage lasted three days. There are entries in the district court's docket, incorporated in the record before us, which corroborate this statement.
 
 
 9
 On February 15, 1955, the unions moved 'pursuant to the Arbitration Act, Title § 9 U.S.C.A. 3'[3] 'to stay the proceedings brought against them,' in which motion they set forth: 'since the issues involved are properly referable to arbitration under the contract between the plaintiff and these defendants, which said contract is referred to in paragraph II of the complaint, and these defendants being not in default in proceeding with such arbitration.' In opposition to that motion plaintiff filed the affidavit of Frank H. Ingram, its vice-president, in which he averred, inter alia, that:
 
 
 10
 '* * * on January 24, 1955, the defendant Unions as charged in plaintiff's complaint, did engage in what is commonly termed a 'sitdown strike'; that such strike was called and conducted by said Unions in direct violation of the contract which was in full force and effect by and between such Unions and the plaintiff herein; that the Unions at no time made any attempt whatsoever to submit any agreement or complaint to arbitration, but on the contrary, proceeded to call such strike without warning or notice to the plaintiff; that if there were any grievances, which were submitted to arbitration in accordance with such contract of employment, the defendants were wholly in default in calling such strike without attempting to arbitrate any alleged complaint or grievance.'
 
 
 11
 The district court, on September 12, 1955, denied the motion and this appeal followed.
 
 
 12
 1. Plaintiff asks us to dismiss the appeal because, so it says, the appeal is taken from an order which is not final or appealable.
 
 
 13
 We hold that the motion for a stay in this case was an application for an interlocutory injunction based upon the motion setting up the special defense of a duty to arbitrate. Shanferoke Co. v. Westchester Co., 293 U.S. 449, at page 452, 55 S.Ct. 313, 79 L.Ed. 583. See also Enelow v. N.Y. Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440. Title 28 U.S.C.A. 1292 provides that courts of appeals shall have jurisdiction of appeals from:
 
 
 14
 '(1) Interlocutory orders of the district courts of the United States, * * * refusing * * * injunctions, * * * except where a direct review may be had in the Supreme Court; * * *.'
 
 
 15
 Hence the order in question is interlocutory and appealable.
 
 
 16
 Plaintiff relies on Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233. There the court, 348 U.S. at page 184, 75 S.Ct. 249, distinguished that case from the Shanferoke case, which we believe is controlling here.
 
 
 17
 2. The local unions rely on 3 of the Federal Arbitration Act, Title 9 U.S.C.A.,s 3, supra, note (3). For the purpose of our disposition of this case, we shall assume, without deciding, that said act is applicable to this case.[4]
 
 
 18
 It is obvious that the unions were not entitled to a stay unless it appeared that they were 'not in default in proceeding with such arbitration.' That is a part of 3 and was recognized as essential by the unions when they stated in their motion for a stay, 'these defendants being not in default in proceeding with such arbitration'. According to the record, they offered in the district court no factual showing that they were not in default. On the other hand, plaintiff showed by its verified complaint and by the affidavit of Ingram that the unions engaged in, induced, encouraged and caused the strike or work stoppage, in direct violation of their contract with plaintiff. It further appears from said affidavit that the unions at no time made any attempt to submit any agreement or complaint to arbitration, but on the contrary proceeded to call such strike without warning or notice to plaintiff, and that they were wholly in default in calling such strike without attempting to arbitrate.
 
 
 19
 The collective bargaining contract in question provided first for 'Grievance Procedure', which is a method of settling an employee grievance. In the event that such grievance could not be handled by the foreman or a joint standing committee, arbitration procedure was established:
 
 
 20
 '* * * to the end that fruitless controversies shall be avoided, good feelings and harmonious relations be maintained, and the prosecution of the business in which the parties have a community interest be assured without strike, lockout, slow down or interruption of any kind.
 
 
 21
 'It is agreed that the procedures herein provided for settling disputes by arbitration shall be used to the exclusion of any other means available to the parties who execute this Agreement, it being understood that all arbitration decisions rendered under the terms of this contract are final and binding on both parties. Any rights or remedies otherwise available to the parties to this contract are hereby expressly waived.'
 
 
 22
 If the unions had grievances, it is apparent that they ignored the grievance procedure, as well as the provision for arbitration. Instead they instituted a sit down strike which was disruptive of plaintiff's business and the work of its employees. That action was in direct conflict with the arbitration procedure called for by the contract. Indeed, the unions in their brief herein quote the following language from Lewittes & Sons v. United Furniture Workers, D.C., 95 F.Supp. 851, at page 856:
 
 
 23
 'Where the parties manifest a purpose to dispose of their disputes by arbitration rather than resort to the use of economic force or pressures, their agreements should be liberally construed with a view toward the encouragement of arbitration. * * * The Courts should be reluctant 'to strike down a clause which appears to promote peaceful labor relations rather than otherwise."
 
 
 24
 The unions chose to act suddenly and without warning in using the economic force or pressure of a sit down strike. Obviously, a chief purpose of the arbitration agreement was to avoid a strike. When the unions embarked upon the strike they voluntarily by-passed arbitration. When they struck the wrong was done and the damage to plaintiff began. Then it was that plaintiff's right of action for damages and injunctive relief to prevent further damage accrued.
 
 
 25
 3. Faced with plaintiff's suit for injunction and damages, the unions sought a stay order pursuant to 3 of the Arbitration Act.[5] However, their position at that time was untenable. First, there was then no longer any issue referable to arbitration under the agreement in reference to arbitration. Even if the unions originally had an issue referable to arbitration, they chose instead to resolve that issue in their favor by use of their economic strength. Having thus violated their contract to plaintiff's damage, it was too late for them to demand arbitration on that issue. Secondly, before the court could be justified in granting the stay order, it was necessary that the unions show that they were not in default with proceeding with such arbitration. While in their motion they quote the language from the proviso of 3, in the form of a general conclusion that they were not in default, this was not a sufficient showing. Against their unverified motion in that form, the complaint, under oath, and Ingram's affidavit set forth facts (in no way denied), which clearly show that the unions were seriously in default in embarking upon a strike rather than seasonably seeking arbitration.
 
 
 26
 For the reasons hereinbefore set forth, we hold that the district court did not err in entering the order from which the unions have appealed, and therefore that order is
 
 
 27
 Affirmed.
 
 
 
 [1]
 Sometimes referred to as 'the unions'
 2ss 29 U.S.C.A. 141, 185; 61 Stat. 136, 156.
 
 
 [3]
 'If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'
 
 
 [4]
 Counsel agree that there is a contrariety of opinion among the courts on this subject. Cf. Hoover Motor Express v. Teamsters, Chauffeurs, etc., 6 Cir., 217 F.2d 49; United States Steel Corporation v. Nichols, 6 Cir., 229 F.2d 396; United Electrical, R. & M. Wkrs. v. Miller Metal Prod., 4 Cir., 215 F.2d 221; Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 192 F.2d 310 and International Union v. Colonial Hardwood Floor Co., 4 Cir., 168 F.2d 33
 5s 9 U.S.C.A. 3.