**E. T. SIMONDS CONSTRUCTION COMPANY, a Corporation, Plaintiff,**

v.

**LOCAL 1330 OF INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA, AFL–CIO, and Southern Illinois District Council of International Hod Carriers' Building and Common Laborers' Union of America, AFL–CIO, Defendants.**

Civ. A. No. 4761.

United States District Court
E. D. Illinois.

March 30, 1962.

———◆———

Feirich & Feirich, Carbondale, Ill., and Finch, Finch & Knehans, Cape Girardeau, Mo., for plaintiff.

John M. Schobel of Gruenberg & Schobel, St. Louis, Mo., and Thomas Q. Keefe, East St. Louis, Ill., for defendant Local 1330, etc.

J. F. Souders, of Gruenberg & Schobel, St. Louis, Mo., and Thomas Q. Keefe, East St. Louis, Ill., for defendant Southern Illinois Dist. Council, etc.

JUERGENS, District Judge.

Plaintiff E. T. Simonds Construction Company (hereinafter referred to as employer) filed its complaint alleging a violation of contract between it and the defendants, labor organizations.

Jurisdiction is founded on Section 301 of the Labor Management Relations Act, as amended (29 U.S.C.A. § 185). Plaintiff is a corporation organized under the laws of the State of Delaware and is authorized to do business in the State of Illinois and at the time of the occurrence, out of whch this action arises, was engaged in highway construction in Union County, Illinois. Defendants Local 1330 of International Hod Carriers Building and Common Laborers Union of America, AFL–CIO, and Common Laborers Union of America, AFL–CIO (hereinafter referred to as unions), are labor organizations and at all times mentioned herein

were the collective bargaining representatives for common and semi-skilled laborers on the highway construction project on which the plaintiff was engaged.

Employer and unions entered into an agreement covering the rates of pay, hours of employment, working conditions and other obligations concerning the work to be performed by the employer on the highway construction project. The contract was in full force and effect during the time of the occurrence out of which this action arises.

The complaint alleges that on or about Tuesday, October 18, 1960, the unions ceased work and walked off employer's job without authorization or approval of the plaintiff and left their employment contrary to and in violation of Article 13 of the agreement between the parties; that the union members remained away from the work from October 18, 1960, until October 25, 1960, when they returned to the job. Article 13 of the agreement provides as follows:

"ARTICLE NO. 13
"ARBITRATION

"There shall be no stoppage of work on account of any differences that might occur between the Contractor and the Union, or between different crafts on the work. If matters cannot be adjusted quickly, between the representatives of the Individual Contractor and the Local Business Agent, the matter shall be immediately referred to a Board consisting of six (6) members, three to be appointed by the Contractor, and three to be appointed by the Union, and these six members shall have the authority to choose a seventh member, if and when they deem it necessary."

The defendant unions filed separate answers and separate counterclaims. The counterclaims, although separate, are identical.

The counterclaims allege a violation of the employment contract. They further allege that on or about October 18, 1960, the employer discharged without just or proper cause employees represented by the unions; locked out the employees and refused to permit them to continue working for plaintiff at their regular employment in violation of Article 13 of the contract; that the acts of the plaintiff caused a work stoppage.

Both plaintiff and defendants claim damages for violation of Article 13 of the agreement.

The employer contends the unions caused a work stoppage in violation of Article 13. The defendants by their counterclaims assert that a work stoppage occurred and that the work stoppage was the fault of the employer.

According to the allegations of both parties, it is clear that a work stoppage did occur and that the work stoppage was a violation of Article 13 of the agreement.

The defendants have filed their motion to stay this action pending arbitration, asserting that Article 13 of the agreement provides a grievance procedure and that under the provisions of Article 13 the intent is that any and all difficulties or disputes which develop or occur during the existence of the agreement are to be arbitrated, and further assert that the defendants have advised plaintiff that they are willing to submit the matter to arbitration. They now move for an order to stay this cause pending arbitration.

It is beyond dispute that a work stoppage did in fact occur and it is beyond dispute that this work stoppage was a violation of the provisions of the agreement between employer and unions. The differences of opinion and claims for damages stem from the divergence of views as to the cause for the work stoppage. Each blames the other.

The sole question presented by the motion is whether or not the violation of the no-work stoppage provision of the contract is a matter which may properly be relegated to arbitration procedures.

It seems clear that when the work stoppage occurred either one or the other of the parties, or possibly both of the

parties, had violated the contract and the innocent party, if there is an innocent party, would accordingly be entitled to any damages it may have suffered from such contract violation.

The very purpose for Article 13 was to avoid and prevent work stoppage, and in order to accomplish this purpose arbitration procedures were provided. No arbitration was asked by either party prior to the work stoppage. A work stoppage occurred, the fault for which must be determined. Once the work stoppage occurred, then clearly a violation of the contract was present. Arbitration would not and will not correct a violation of the contract after a breach has occurred. The breach of contract was complete at the very moment the work stoppage began and continued until such time as work resumed. The contract outlaws work stoppages and provides a means for preventing work stoppages; it does not provide for arbitration after work stoppages have occurred. Industrial strife in the nature of work stoppage was to be avoided, and in order to avoid this industrial strife arbitration procedures were provided. The guilty party, however, failed to avail itself of arbitration, resorting rather to a work stoppage. In doing so, it embarked on a violation of the contract.

Here neither party has shown why it was not at fault in proceeding with arbitration, each alleging rather that the other party was guilty of the work stoppage. The only question this Court has to decide is which party was guilty of the work stoppage and the amount of damages due to the injured party, if any. Arbitration at this time could avail the parties nothing.

In Cuneo Press, Inc. v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 1956, 235 F.2d 108, the Circuit Court of Appeals for this Circuit had before it for consideration a question somewhat akin to the one which is here presented. The Court there said:

"Faced with plaintiff's suit for injunction and damages, the unions sought a stay order pursuant to § 3 of the Arbitration Act [9 U.S.C.A. § 3]. However, their position at that time was untenable. First, there was then no longer any issue referable to arbitration under the agreement in reference to arbitration. Even if the unions originally had an issue referable to arbitration, they chose instead to resolve that issue in their favor by use of their economic strength. Having thus violated their contract to plaintiff's damage, it was too late for them to demand arbitration on that issue. Secondly, before the court could be justified in granting the stay order, it was necessary that the unions show that they were not in default with proceeding with such arbitration. * * * "

The difference between the instant case and Kokomo is that here the employer accuses unions of violations and unions accuse employer of violations, each asking damages of the other. In Kokomo it does not appear that a counterclaim was involved. Here neither party has shown that it was not in default in causing the work stoppage.

The United States Supreme Court in Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), was called upon to decide whether or not violation of a no-strike clause in a contract was a matter proper to be submitted to arbitration.

The Court there said:

"The collective bargaining contract expressly imposed upon both parties the duty of submitting the dispute in question to final and binding arbitration. In a consistent course of decisions the Courts of Appeals of at least five Federal Circuits have held that a strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement. The National Labor Relations Board has reached the same conclusion. W. L. Mead, Inc., 113 N.L.R.B. 1040. We approve that doctrine. To hold

otherwise would obviously do violence to accepted principles of traditional contract law. Even more in point, a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare. See United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409."

The Supreme Court in the Warrior decision has the following to say:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

Legislation during the past fifty years has been toward avoiding labor-management difficulties; and to that end through a constant process of evolution, both legislative and contractual, provisions have been written into various contracts between labor and management to the end that labor-management strifes can be avoided.

When the no-work stoppage provision was inserted in this labor-management contract, the parties had an undoubted intention of avoiding labor strife in the event of a grievance. To effect this purpose they provided for arbitration to settle grievances which might occur. When such a no-work stoppage provision is inserted in any labor-management contract and there is a work stoppage, the contract then has been immediately breached. There is then nothing to arbitrate. Arbitration would serve no purpose insofar as the contract violation is concerned, since when there is a work stoppage the very purpose of arbitration has been defeated.

When a contract contains a "no-work stoppage" provision coupled with an arbitration clause and a strike or lock-out occurs, the guilty party has by-passed arbitration and has breached the contract, for which it may be called upon to make restitution for losses suffered by the other as the result of its contract violation.

No arbitral question is presented in this case and, accordingly, the Court finds that the defendants' motion to stay action pending arbitration must be denied.