BUTTE MINERS' UNION NO. 1 OF IN-
TERNATIONAL UNION OF MINE,
MILL AND SMELTER WORKERS, an
unincorporated association; Anaconda
Mill and Smeltermen's Union No. 117 of
the International Union of Mine, Mill
and Smelter Workers, an uincorporated
association; Great Falls Mill and
Smeltermen's Union No. 16 of the In-
ternational Union of Mine, Mill and
Smelter Workers, an unincorporated as-
sociation; The International Union of
Mine, Mill and Smelter Workers, an un-
incorporated association, Plaintiffs,

v.

The ANACONDA COMPANY, a corpora-
tion, Defendant.

No. 596.

United States District Court
D. Montana,
Butte Division.

March 3, 1958.

Nathan Witt, New York City, and
Leif Erickson, Helena, Mont., for plain-
tiff.

J. T. Finlen, W. M. Kirkpatrick, P. L.
MacDonald, Sam Stephenson, Jr., and
Joseph B. Woodlief, Butte, Mont., for
defendant.

MURRAY, Chief Judge.

This is an action brought by the plain-
tiffs under the provisions of Section 301

of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, for specific performance of the arbitration provisions of collective bargaining agreements in an industry affecting commerce. Plaintiffs are the bargaining agents for the miners and mill and smelter workers employed by defendant in its mines at Butte, Montana, and in its smelters at Anaconda and Great Falls, Montana.

Butte Miners' Union No. 1, Anaconda Mill and Smeltermen's Union No. 117 and and Great Falls Mill and Smeltermen's Union No. 16, are each affiliated with the International Union of Mine, Mill and Smelter Workers. Each of the three local unions entered into a separate contract with defendant covering "rates of wages, hours of labor, and other conditions of employment" covering miners employed by defendant in its Butte mines and smeltermen employed by defendant in its Anaconda and Great Falls smelters respectively. The International Union is also a party to each agreement. The three agreements, which will be hereinafter referred to as the collective bargaining agreements, differ in some respects, but the provisions of each agreement that are relevant and material to this case are identical. Each of the collective bargaining agreements is dated July 1, 1956, and they are effective from July 1, 1956, to June 30, 1959.

In addition there is in existence between each of the local unions and the defendant company a pension plan agreement. These agreements, which will be hereinafter referred to as pension agreements, are each dated March 14, 1952, and have been amended twice since that date, the first amendment in each instance being dated October 15, 1954; and the second amendment in the case of the Butte miners and Anaconda smeltermen's pension plan agreement being dated June 29, 1956, and the second amendment to the Great Falls smeltermen's pension plan agreement being dated July 7, 1956. Insofar as relevant and material in the case, the provisions of the pension plan agreements are the same in each instance.

Disputes arose between the unions and the company concerning the termination by the company of the employment of union member employees upon their reaching the age of 68 years even though the said employees were not eligible for pensions under the pension agreements. At each of the places where such terminations occurred, the union concerned listed the termination as grievances, and attempted to have the dispute settled under the grievance procedure set up in the collective bargaining agreements, the final step of which is arbitration. The company refused to submit the dispute to arbitration, taking the position that the terminations were made under the provisions of the pension agreements, and that the pension agreements do not provide for the arbitration of such disputes. The unions filed this action seeking to compel the defendant to submit the dispute to the arbitration process provided in the collective bargaining agreements. Defendant answered and attached to its answer a copy of the collective bargaining agreements dated July 1, 1956, between the defendant and each of the plaintiffs, and also a copy of the pension agreements dated March 14, 1952, together with amendments, between the defendant and each of the plaintiffs. Each side to the suit has moved for summary judgment upon the ground that there is no genuine issue as to any material fact, plaintiffs and defendant each claiming to be entitled to judgment as a matter of law.

The main issue in this case is whether the termination by the defendant of the employment of members of plaintiff unions who have reached 68 years of age, even when such persons are not entitled to pension under the pension agreements, constitutes a dispute or grievance between plaintiff unions and defendant company which is arbitrable under the provisions of the collective bargaining agreements. There is also the question of whether the Court may order the spe-

cific performance of the arbitration agreement even if it is found that an arbitrable dispute exists.

■ Whatever doubt may have once existed as to power of the Court to order specific performance of the arbitration provisions of a collective bargaining agreement has been put to rest by the Supreme Court in Textile Workers Union, etc. v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and General Electric Co. v. Local 205, etc., 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028. In Textile Workers v. Lincoln Mills, supra, 353 U.S. at page 456, 77 S.Ct. at page 917, the Court said:

"It seems, therefore, clear to us that Congress adopted a policy which placed sanctions behind agreements to arbitrate grievance disputes, by implication rejecting the common-law rule, discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582, against enforcement of executory agreements to arbitrate. We would undercut the Act and defeat its policy if we read § 301 narrowly as only conferring jurisdiction over labor organizations.

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.  *  *  *."

The Section 301(a) referred to in this quotation is Section 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185, under which the present suit is brought.

■ Defendant in its brief and oral argument contends that the law of the State of New York is controlling in this case because by a specific provision of the pension agreements New York law is made applicable and controlling in the interpretation of those agreements. However, it is the collective bargaining agreements which must be construed to

determine the narrow issue presented in this case, and not the pension agreements. The Court is not here concerned with whether the terminations of employment in dispute were justified by the provisions of the pension agreements. If an arbitrable issue is found to exist under the collective bargaining agreements, the arbitrator will apply New York law in determining whether the terminations of employments complained of were or were not justified by the provisions of the pension agreements. In construing the collective bargaining agreements with reference to whether an arbitrable dispute exists between plaintiffs and defendant here, the Court, in accordance with Textile Workers v. Lincoln Mills, supra, must apply federal law, of which there seems to be a considerable body already fashioned, and this Court·is not faced with the necessity of fashioning any law in this case.

In Local 205, etc. v. General Electric Co., 233 F.2d 85, 101, affirmed, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, the Court of Appeals for the First Circuit said:

"The scope of an arbitration pledge is solely for the parties to set, and thus the determination of whether a particular dispute is arbitrable is a problem of contract interpretation."

We turn then to the provisions of the collective bargaining agreements with reference to disputes, grievances and arbitration to determine the scope of the arbitration pledge. Except for slight differences in wording between the three agreements, which are not material here, those provisions are:

"Walkouts, Lockouts, Protection of Property:

"During the life of this agreement the Union agrees that there shall be no collective cessation of work by the members of the Union on account of any controversy with the Company respecting the provisions of this agreement, or any other controversy that may arise between

434

the parties to this agreement, until and unless all of the means of settling any such controversy under the provisions of this agreement, or otherwise, shall have failed. The Company agrees that it will not lock out the employees covered by this agreement on account of any controversy with the employees respecting the provisions of this agreement, or any other controversy that may arise between the parties to this agreement, until and unless all other means of settling such controversy under the provisions of this agreement, or otherwise, shall have failed; * * *."

"Grievances:

"Any grievance or misunderstanding concerning any rule, practice or working condition, or any other grievance which cannot be settled on the job between any employee and his employer, must be first taken up with the Management by said employee or his representative, and in case a settlement cannot be made, the subject matter which caused the grievance must be taken up with a committee representing the Union and a committee of the Company. * * *."

Then follows various steps to be taken looking toward a settlement of the grievance, the final step of which is arbitration.

"Subjects and Expenses of Arbitration:

"No question of a change in the wage scale or differentials shall be the subject of arbitration. The fees and expenses of such arbitrator shall be borne equally by the Union and the Company."

Bearing in mind the admonition of Judge Follmer in Insurance Agents International Union v. Prudential Ins. Co., D.C., 122 F.Supp. 869, 872, that "arbitration is here to stay, and particularly where the parties have elected to submit their differences to it, the courts should not by hair splitting decisions hamstring its operation", we proceed to analyze these provisions of the collective bargaining agreements.

Broader arbitration provisions than those contained in the collective bargaining agreements between plaintiffs and defendant are difficult to imagine. In the preamble to the agreements, it is recited that they are intended to cover rates of wages, hours of labor and *other conditions of employment* of all men subject to the jurisdiction of the Unions, employed by the Company. Certainly age is a condition of employment. Then the parties mutually agree that there will be no strike or lockout on account of any controversy respecting the provisions of the agreement, *or any other controversy that may arise between the parties* until and unless all the means of settling the controversy under the provisions of the agreement, or otherwise, shall have failed. Then, in the machinery set up in the agreements for the handling of disputes under the heading "Grievances" the parties agreed that any grievance or misunderstanding concerning any rule, practice or working condition, *or any other grievance which could not be settled on the job,* would be taken up in the manner therein provided, the final step of which is arbitration.

Finally, the parties, no doubt realizing that they had used extremely broad language in defining the controversies which were to be the subject of the grievance procedure they set up, themselves excluded the things from arbitration which they desired to exclude when they provided "No question of a change in the wage scale or differentials shall be the subject of arbitration."

■ Argument has been made that the dispute here involved between plaintiffs and defendant is not covered by and embraced within the meaning of the term "grievances", used in the contract. However, this Court agrees with the Court in Timken Roller Bearing Co. v. National Labor Relations Board, 6 Cir., 161 F.2d 949, 955, that the term "grievances" as used in a collective bargaining agreement

is not a word of art and has no connotation differing from its meaning in ordinary use. The dispute in this case is certainly a "grievance" as that term is interpreted and discussed in Douds v. Local 1250, etc., 2 Cir., 173 F.2d 764, 771, 9 A.L.R.2d 685. Furthermore, in this case, as in the Timken Roller Bearing case, supra, the contracts contain broader language, "or any other controversy that may arise between the parties".

■ In view of the broad terms used in the agreements, "any other controversy that may arise between the parties", "any other grievance which cannot be settled on the job", and in view further of the fact that the parties by express provision, excluded from arbitration those matters which they did not desire to arbitrate, the Court is of the opinion that the dispute between the plaintiffs and the defendant is an arbitrable dispute within the meaning of the collective bargaining agreements. The following statement in the case of Signal-Stat Corporation v. Local 475, etc., 235 F.2d 298, at page 301, sums up precisely the Court's opinion in this case:

"We think the broad arbitration clause in the collective bargaining agreement here involved covers a dispute relating to an alleged breach of the no-strike clause. Under the agreement, 'All disputes, grievances or differences' are arbitrable. We can hardly imagine more broadly inclusive language. This phraseology distinguishes the instant case from Markel Electric Products, Inc., v. United Electric, Radio & Machine Workers, supra [2 Cir., 202 F.2d 435]. To the extent that the other cases cited by plaintiff require a contrary result, we think them erroneous. We think their interpretations of similar arbitration clauses are unduly restrictive and achieve, by indirection, the same result as the old, and now generally rejected, judicial aversion to enforcing arbitration agreements."

Cases like United States Steel Corp. v. Nichols, 6 Cir., 229 F.2d 396 and United Protective Workers v. Ford Motor Co., 7 Cir., 194 F.2d 997, are different from the case at bar. In those cases the discharged employees were suing the employers for damages for their discharge which the employer claimed was by virtue of a policy of compulsory retirement plan. In those cases the Courts were called upon to decide the very issue which the arbitrators will be called upon to decide in this case.

Defendant argues that under the express provisions of the pension agreements, only certain controversies that may arise between the parties are arbitrable, and that the present controversy is not one of them. However, as pointed out, the arbitration is not sought under the pension agreements, but under the collective bargaining agreements. It may be that when the controversy comes before the arbitrators, they may find that the pension agreements furnish justification for the terminations of employment complained of, but that is for the arbitrators to decide.

Defendant also seeks some support for its position in the provision of the pension agreements to the effect that such agreements are separate and distinct documents and are not to be construed as a part of or collateral or supplemental to any collective bargaining agreement. This provision of the pension agreements, however, seems to the Court to weaken the position of the defendant, for if the pension agreements could be considered as amending or supplementing the collective bargaining agreements then they might be considered, as the company urges, in determining whether the present controversy presents an arbitrable issue under the collective bargaining agreements. Being by their express provisions not amendatory of or supplemental to the collective bargaining agreements, the pension agreements cannot be considered in deciding the issues of arbitrability under the collective bargaining agreements. There is likewise a provision in each of the collective bargaining agreements that "This contract is exclusive for its entire term and not subject to further negotiation *and is to cover all contract relations between the parties*

for its entire term", which prevents any recourse to the pension agreements in determining the question or arbitrability presented here.

There is this additional circumstance which impels the Court to the conclusion it has reached. The pension agreements were all in existence at the time the last collective bargaining agreements with the broad, all inclusive provisions for disposing of controversies and grievances previously pointed out were executed. At that time, had the parties intended to exclude such a controversy as the instant one from the grievance procedures they set up on the ground that it was covered by the pension agreements, as defendant now maintains, it would have been a simple matter to so state in the collective bargaining agreements as they did with respect to questions concerning wage scales and differentials.

■■ It is also urged by defendant that no bona fide dispute exists because the pension plan by its terms requires the termination of employment of employees 68 years of age or older, even though they are not entitled to a pension. While a frivolous or patently baseless claim should not be ordered to arbitration, Local 205, etc., v. General Electric, 1 Cir., 233 F.2d 85, the controversy here is not of that type. Indeed, defendant admits that a dispute exists but in effect argues that because it has a defense in the pension agreements to the claim of plaintiffs that it is not a bona fide dispute. The fact that a defense may exist to a claim does not make the claim frivolous or baseless, and the validity of the defense should be decided by the tribunal to which the parties have agreed to submit their disputes—in this case, the arbitrators—and the Court should not usurp that function under the guise of determining whether there is an arbitrable issue.

■ Finally, it has been suggested by defendant that summary judgment may not be granted to plaintiff in an action seeking specific performance. This rule has its foundation in the fact that summary judgment is granted only when a party is entitled to judgment as a matter of law, whereas, specific performance generally is a remedy equitable in nature to which no one is entitled as a matter of right or of law, but only as he is able to move the conscience of the equity court. Whatever validity such argument may once have had has been destroyed in actions brought under the Labor Management Relations Act by the Supreme Court's decision in Textile Workers v. Lincoln Mills, supra, and General Electric v. Local 205, etc., supra, where the Supreme Court held that Section 301(a) of the Labor Management Relations Act furnishes a body of federal substantive law for the enforcement of collective bargaining agreements. It is interesting to note that perhaps the leading decision in this type case, and one cited with approval by the Supreme Court in Textile Workers v. Lincoln Mills, supra,—Judge Wyzanski's decision in Textile Workers Union v. American Thread Co., D.C., 113 F.Supp. 137—was decided on motion for summary judgment.

Plaintiffs are ordered to prepare a decree in accordance with the opinion expressed in this memorandum, submit it to counsel for defendant for approval as to form, and present it to the Court for signing within 15 days from the date of receipt of this memorandum.