GAY'S EXPRESS, INC.,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 404, AFL–CIO.

Alvin R. HOLMES, Doing Business Under the Firm Names and Style of Holmes Transportation Service,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 404, AFL–CIO.

Civ. A. Nos. 56–957, 56–958.

United States District Court
D. Massachusetts.
Jan. 27, 1959.

Allan A. Tepper, Boston, Mass., for plaintiff.

Stephen J. D'Arcy, Jr., Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

These are actions under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, to recover damages for an allegedly unlawful strike. Defendant union moves for judgment on the pleadings.

The basic facts, which do not seem to be in dispute, are briefly these. Plaintiffs are motor carriers engaged in interstate transportation of goods. They share the same terminal at Springfield, Massachusetts. Both plaintiffs and defendant were parties to a collective bargaining contract in effect from April 11, 1955, to April 11, 1958. On September 6, 1956, Gay's Express, Inc. discharged one Rainville, one of its drivers and a member of defendant union, for what it contends was adequate cause. Upon employer's refusal to reinstate Rainville the union called plaintiff's remaining employees and the employees of plaintiff Holmes out on strike on September tenth. The strike continued until December 10, 1956.

The collective bargaining agreement contained no express no-strike covenant on the part of the union. It did set up in Article XXI a grievance procedure and provided in Article XXI(d) that:

"Any dispute concerning the application or interpretation of this Agreement that cannot be adjudicated between the Employer and the Union shall be referred to the General Grievance Committee, the decision of the Committee to be final and binding on both parties."

Plaintiffs' contention is that the dispute concerning the propriety of Rainville's discharge was a matter that should have been referred to the General Griev-

ance Committee, and that defendant union by calling a strike to enforce his reinstatement instead of following the grievance procedure committed a breach of the collective bargaining agreement. Plaintiff Holmes further argues that since he is a distinct employer from Gay's Express, Inc., the strike against him and the picketing of his place of business was a violation of § 303(a) of the Act, 29 U.S.C.A. § 187(a).

■ Defendant's motion for judgment on the pleadings is based on its contention that the strike cannot be held to violate the contract in the absence of an express no-strike provision in the agreement. Defendant's position seems to be that the question of Rainville's discharge was arbitrable, that is, that the union could have submitted it to the grievance procedure, but that it was not bound to do so but was free to strike to enforce its demands. Defendant's position cannot be sustained in the light of the decisions in W. L. Mead, Inc. v. International Brotherhood of Teamsters, Local Union No. 25, D.C., 126 F.Supp. 466; Id., D.C., 129 F.Supp. 313, affirmed 1 Cir., 230 F.2d 576, and United Construction Workers v. Haislip Baking Co., 4 Cir., 223 F.2d 872, 876–877. Defendant argues that this case differs from the Mead case in that the contract here does not contain any provision that the grievance procedure shall be the "exclusive" method of settling disputes. The language used here is in effect the same, providing that *"Any dispute * * * shall be referred* to the General Grievance Committee, the decision of the Committee to be *final and binding on both parties."* (Emphasis supplied.) Clearly this must mean that any arbitrable dispute is to be settled by the grievance procedure, and that the union impliedly has agreed not to strike to enforce its own settlement of any such dispute. The quoted provision would lose all sense if it meant only what the union contends, that is, that the union may elect to submit a dispute to the grievance procedure and the employer shall be bound by the decision, but that the union is free to ignore the grievance procedure and resort to a strike whenever it so desires.

■■ Alternatively, although no formal motion for a stay is before the court, defendant argues for a stay of proceedings on the ground that the plaintiffs' claim that the strike violated the contract is a dispute which under the contract should be settled by resort to the grievance procedure. Defendant having violated its contract by going on strike and refusing to follow the grievance procedure cannot now contend that plaintiff is barred from asserting its right to recover damages by an action in this court and must refer the question of the strike itself to the grievance procedure. Mead case, supra, 129 F.Supp. at page 315. In any event the question of whether or not the union has committed a major breach of contract by failing to utilize the grievance procedure and striking in violation of its implied agreement not to do so, is not the type of dispute which should be understood as falling within the coverage of the grievance procedure where as here, there is no express provision that the propriety of a strike shall be arbitrable. Hoover Motor Express Co. v. Teamsters, Chauffeurs, Helpers and Taxicab Drivers, Local Union No. 327, 6 Cir., 217 F.2d 49, 53; United Electrical, Radio & Machine Workers of America v. Miller Metal Products, Inc., 4 Cir., 215 F.2d 221, 223; Markel Electric Products, Inc. v. United Electrical, Radio & Machine Workers of America, U. E., 2 Cir., 202 F.2d 435, 437, 438.

Defendant's motion for judgment on the pleadings is denied.