TENNEY ENGINEERING, INC., a New Jersey corporation, Plaintiff,

v.

UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA (UE), LOCAL 437, et al., Defendants.

Civ. A. No. 716–52.

United States District Court
D. New Jersey.

July 7, 1959.

---

Ralph N. Solodar, Orange, N. J., for plaintiff Sidney O. Raphael, New York City, of counsel.

Gross, Goldberger & Stavis, by Morton Stavis, Newark, N. J., for defendants.

HARTSHORNE, District Judge.

The plaintiff Company has brought this suit for damages against defendant Union under Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185, charging the defendant with having caused the plaintiff's employees to strike or engage in work stoppages, in violation of the no-strike clause contained in the collective bargaining agreement in effect between the parties. On being served with the summons and complaint, defendant immediately moved for an order to stay the action pending arbitration, pursuant to 9 U.S.C. § 3. This Court, by a different branch, denied the motion, and the defendant took an appeal to the Court of Appeals for the Third Circuit, 3 Cir., 1953, 207 F.2d 450. That court held that 9 U.S.C. § 3, embodying the stay provisions of the Federal Arbitration Act, "applies to all contracts for arbitration which may be involved in suits properly brought in the federal courts * * *." 207 F.2d at pages 453, 454. The case was remanded to this Court, in the following language:

"We conclude that the defendant is entitled to a stay of proceedings under Section 3 of title 9, United States Code, if the collective bargaining agreement between the parties, properly construed and applied,

provides for arbitration of the issues raised by the complaint and if the defendant is itself not in default in proceeding with such arbitration." ibid.

Accordingly, the first question to be determined is whether or not the arbitration clause in the collective bargaining agreement, properly construed and applied, calls for arbitration of a claim by the Company against the Union for damages arising out of an alleged breach by the Union of its undertaking not to cause a strike. Section 52 of the collective bargaining agreement in question, in dealing with arbitration, provides:

"All differences, disputes and grievances between the parties that are not satisfactorily settled after following the procedure set forth above [dealing with grievance machinery] shall, at the request of either party, be promptly submitted to arbitration. The parties shall select an arbitrator by mutual agreement. If no agreement is reached within three (3) days from the date of the request for arbitration, the arbitrator shall be selected by N. J. Board of Mediation." [Brackets this Court's.]

Note that the Company and the Union thereby agree to arbitrate *"all* differences, disputes and grievances between the parties" [italics this Court's], provided same have not been satisfactorily settled under previously stated procedure. Certainly no clearer language could be used to indicate that the parties intended not only that grievances should be arbitrated, but that all their differences and disputes under the collective bargaining contract should be arbitrated. Furthermore, the provisions as to this preliminary procedure provide:

"Section 50. All differences, disputes and grievances that may arise between U. E. and the employer shall be taken up as follows: * * *."

Then follow provisions for (a) a reference to the department steward and the department foreman, thereafter (b) to the shop committee and the plant superintendent, and thereafter (c) to the U. E. representative and the shop committee, on the one hand, and the employer's representative on the other. This Section concludes:

"If no satisfactory settlement is reached, then the difference, dispute or grievance shall be submitted to arbitration, as hereinafter provided." [As above.]

Of course, a department steward and a department foreman are hardly appropriate to determine the issues arising on a general strike allegedly called by the Union, nor, presumably, would be the shop committee and the plant superintendent, since the Union, as distinguished from its members, would not then be represented. On the other hand, the preliminary consideration under (c) supra, by "the U. E. representative and the shop committee, on the one hand, and the employer's representatives on the other" would represent all involved, including the Union, the member employees and the Company. In other words, this procedure preliminary to arbitration would be applicable, at least in part, to the determination of the issues arising on the violation of a no-strike clause. Thus the allusion in the arbitration clause (Section 52, supra) to the fact that, previous to arbitration, these preliminary procedures should be resorted to, would not indicate that a violation of the no-strike clause was not an issue intended to be included in the "all differences, disputes and grievances between the parties", which should "be promptly submitted to arbitration."

True, the no-strike clause provision is stated in a separate section,[1] which does not additionally refer to arbitration or these preliminary procedures. But the violation of the no-strike clause by the

1. Section 57. During the performance of this Agreement, by the Company, the Union will use all reasonable means to keep its employees at work and will not strike nor suffer its members to engage in any strike, work stoppage, slow-down, sit-down or other interference with the ordinary operation of the Em-

Union, as alleged in the complaint filed by the Company, together with the Union's answer, as given at pretrial, that it had nothing to do with this strike or work stoppage, clearly creates one of the "differences" or "disputes" between the parties, all of which both the Union and the Company agreed to have arbitrated. This construction of the language of the collective bargaining agreement, entered into by both the Company and the Union, is particularly appropriate in the light of (1) the recommendation of the Congress to both labor and industry to resort to "a method agreed upon by the parties" for the settlement of their disputes, Labor Management Relations Act of 1947, 29 U.S.C.A. § 173(d) and (2) the much more favorable attitude of the courts toward enforcing arbitration agreements at present than was the case in past years. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed.2d 972; see also Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978.

Indeed, such was the very construction applied to a similar collective bargaining agreement by the Court of Appeals for the Second Circuit in the recent case of Signal-Stat Corporation v. Local 475, etc., 2 Cir., 1956, 235 F.2d 298, certiorari denied 1957, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428, rehearing denied 1957, 355 U.S. 852, 78 S.Ct. 7, 2 L.Ed.2d 61. In upholding the arbitrability under a collective bargaining agreement of a dispute relating to the alleged breach of a no-strike clause, the court in Signal-Stat said [235 F.2d 301]:

"We think the broad arbitration clause in the collective bargaining agreement here involved covers a dispute relating to an alleged breach of the no-strike clause. Under the agreement, 'All disputes, grievances or differences' are arbitrable. We can hardly imagine more broadly inclusive language. This phraseology

distinguishes the instant case from Markel Electric Products, Inc. v. United Electric, Radio & Machine Workers, supra [2 Cir., 202 F.2d 435]. To the extent that the other cases cited by plaintiff require a contrary result, we think them erroneous. [United Electric, Radio and Machine Workers [of America]. v. Miller Metal Products, 4 Cir., 215 F.2d 221; International Union United Furniture Workers [of America] v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35; Square D Co. v. United Electric, Radio & Machine Workers, D.C., 123 F.Supp. 776.] We think their interpretations of similar arbitration clauses are unduly restrictive and achieve, by indirection, the same result as the old, and now generally rejected, judicial aversion to enforcing arbitration agreements. Cf. Kulukundis Shipping Co. [S/A] v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 983–985. Other cases, with which we agree, support our decision that the instant arbitration agreement covers a dispute arising from an alleged breach of the no-strike clause. See, e. g., Lewittes & Sons v. United Furniture Workers of America, CIO, D.C.S.D.N.Y., 95 F.Supp. 851, 853–854; Pennsylvania Greyhound Lines v. Amalgamated Ass'n, etc., D.C., 98 F. Supp. 789, 791, reversed on other grounds, 3 Cir., 193 F.2d 327; Hudson Wholesale Grocery Co. v. Allied Trades Council, N.J.Ch., 3 N.J. Super. 327, 65 A.2d 557, 559."

True, there are cases reaching a contrary result, as Signal-Stat, supra, indicates, that on which plaintiff Company here primarily relies being International Union United Auto Aircraft v. Benton Harbor, etc., 6 Cir., 1957, 242 F.2d 536,. certiorari denied 1957, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31. But these cases involved collective bargaining agree-

ployer; nor will the Union interfere nor suffer its members or any of them to interfere with employees who are not

included in the bargaining unit mentioned in Section 1 hereof.

ments which were by no means as all-inclusive in their coverage as the present, in which the key words cover "all differences, disputes and grievances". In International Union, supra, for instance, the key word was "grievance" alone. This Court is, of course, aware of the recent decision in Structural Steel & Ornamental Iron Association of N. J. Inc. v. Shopmens Local Union, etc., D.C., 172 F.Supp. 354, by another branch of this Court for which it has the utmost respect. But the record in that case not only indicates a widely different collective bargaining agreement, but that neither of the parties thereto sought the arbitration of the no-strike clause issue, so the attention of the Court was, regrettably, not called to the Signal-Stat case, supra. As to Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, 471, certiorari denied, 1958, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110, the statement therein that a violation of a no-strike clause is not arbitrable is clearly dictum, and the authorities cited by that Court to that effect either hold that the arbitration provisions which they respectively considered were simply not broad enough to make such controversies arbitrable, as in Markel Electric Products, Inc. v. United Elec., Radio & Mach. Workers, 2 Cir., 1953, 202 F.2d 435, or that arbitration cannot be had by the Union, since it was in default in its application therefor.

In short, this Court finds that the arbitration clause here, properly construed and applied, renders arbitrable the present issue as to the Union's alleged violation of the no-strike clause in the collective bargaining agreement, and the damages resulting therefrom.

The next question to be answered by this Court is whether or not the defendant Union is in default in proceeding with such arbitration, so that its application for a stay to that end should be denied. Bear in mind that the question as to this default is not as to the Union's possible default in not asking for arbitration of the previous grievance, after which the work stoppage or strike occurred. This default might well exist, as to that grievance, on the part of whoever instigated the strike or work stoppage. But the question is as to whether the Union is in default in not asking for arbitration of the present issue raised in the present complaint, i. e., the responsibility of the Union for the strike, which it denies, and the possible damages therefrom.

 In the first place, it is the plaintiff Company, the party aggrieved by the strike or work stoppage, which should have instigated the grievance procedure steps terminating in arbitration. Had the Company done so, and had the Union refused to participate in such arbitration, the Union would have been in default, as the person which "when requested, has refused to go to arbitration." Council of Western Elec. Technical Employees—National v. Western Electric Co., 2 Cir., 1956, 238 F.2d 892, 896; Kulukundis, supra; Aircraft Lodge 703, Intern. Ass'n of Machinists AFL-CIO v. Curtiss-Wright Corp., D.C.N.J.1959, 169 F.Supp. 837. But no such arbitration application was made by the Company either on that issue or on the present issue. The first arbitration application was made by the Union and as to this present issue concerning the Union's alleged violation of the no-strike clause. With this arbitration the Company refuses to proceed. Thus the Company, not the Union, is in default on this arbitration. Nor is Cuneo Press, Inc., v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 1956, 235 F.2d 108, certiorari denied 1956, 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed. 2d 119, helpful to the Company in this regard. In that case the Court found that the Union had in fact caused the strike which constituted the breach of the no-strike clause. Here, on the contrary, the Union alleges the strike or work stoppage was a wildcat affair, for which it had no responsibility. It is this very issue of responsibility for this strike or work stoppage which this Court has just found to be the proper subject of arbitration, not of litigation. This

arbitration is asked by the Union, not by the Company. That being the case, the Union cannot be found in default in asking arbitration as to that issue.

Thus, since the issue raised by the Company's complaint herein, as to the responsibility of the Union for the strike or work stoppage and the damages therefrom, is one which the parties have agreed to arbitrate, instead of submitting same to the courts, and since the Union is not in default in asking for the arbitration of this dispute, the stay requested by the Union against this Court's proceeding on the complaint herein will be granted pending the arbitration of such issue.

An order may be entered accordingly.