**DRAKE BAKERIES, INCORPORATED,**
Plaintiff-Appellant,

v.

**LOCAL 50, AMERICAN BAKERY & CONFECTIONERY WORKERS INTERNATIONAL, AFL–CIO,** Defendant-Appellee.

No. 99, Docket 26343.

United States Court of Appeals
Second Circuit.

Argued Dec. 13, 1960.

Decided Feb. 17, 1961.

Robert Abelow, of Weil, Gotshal & Manges, New York City, for plaintiff-appellant.

Howard N. Meyer, of O'Dwyer & Bernstien, New York City, for defendant-appellee.

Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by plaintiff, referred to herein as Drake, from an order entered in an action filed in the court below on January 4, 1960. The action was brought pursuant to § 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185 (a), to recover damages for breach of a

"no-strikes" provision in a collective bargaining agreement between plaintiff and defendant, Local 50, referred to herein as the Union.[1] Before answering the complaint the Union moved under section 3 of the Arbitration Act, 9 U.S.C.A. § 3, to stay all proceedings in the action until arbitration was had in accordance with the terms of an arbitration provision in the collective bargaining agreement. From the order granting this motion Drake has appealed.

The affidavits in support of, and in opposition to, the motion raise no dispute as to the facts which brought about the alleged strike that caused Drake to bring its action. Drake is engaged in the production and sale of cake. During the winter of 1959–1960, Christmas and New Year's Day fell on Friday. If Drake's cake was baked on the Thursday before Christmas or New Year's and sold on the Monday following these holidays it would not be fresh. This would impair Drake's competitive position with concerns which did produce cake on the Saturdays following the holidays and would injure Drake's business reputation. On December 16, 1959, Drake gave notice to its employees and to the Shop Committee of the Union that its production employees need not work on the Thursday immediately preceding the holidays but would be expected to do so on the Saturday following them. Enough employees reported for work on the Saturday following Christmas to enable bakery products to be produced, but on the Saturday following New Year's Day only 26 out of 191 employees showed up. These were too few to engage in production and Drake was forced to close its plant on that important scheduled production date. Two days later, the present suit was filed, charging that the defendants had "instigated and encouraged" the members of the Union "to engage in a strike, a concerted stoppage, and/or cessation of services." Whether the Union breached the "no-strikes" clause and whether the rescheduling was permissible for the particular week involved we need not decide, since the only question before us is whether the District Court or an Arbitrator should determine whether the Union violated the "no-strikes" provision of the collective bargaining agreement.

The collective bargaining agreement contains provisions entitled "Grievance Procedure" (Article V), and "Arbitration" (Article VI) and "No-Strikes" (Article VII); they are set out in the margin.[2] Each article must be inter-

1. Section 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Subsection (b) deals with the responsibility of labor organizations and employers for the acts of their agents, declares a labor organization an entity for purposes of suit, and provides for the enforcement of money judgments against labor organizations. Subsection (c) although framed in terms of "jurisdiction," deals with venue. Subsection (d) deals with service of process on labor organizations. Subsection (e) deals with determination of the question of agency.

2. "Article V—Grievance Procedure

"(a) The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.

"In the adjustment of such matters the Union shall be represented in the first instance by the duly designated committee and the Shop Chairman and the Employer shall be represented by the Shop Management. It is agreed that in the handling of grievances there shall be no interference with the conduct of the business.

"(b) If the Committee and the Shop Management are unable to effect an adjustment, then the issue involved shall be submitted in writing by the party claiming to be aggrieved to the other party. The matter shall then be taken up for adjustment between the Union and the

preted with relation to the others. Article V requires an "attempt to adjust all complaints, disputes or grievances * * involving questions of interpretation or application of any * * * matter covered by this contract or any conduct or relation between the parties hereto, directly or indirectly." This is broad language. But the second paragraph contains a very significant limitation: *"It is agreed that in the handling of grievances there shall be no interference with the conduct of the business."* [Italics added.] If grievances are not "adjusted" in accordance with Article V, "then either party shall have the right to refer the matter to arbitration as provided in Article VI." Article VII states very specifically that "There shall be no strike, boycott, interruption of work, stoppage, temporary walk-out or lock-out for any

reason," with one exception, namely, *"if either party shall fail to abide by the decision of the Abitrator, after the receipt of such decision, under Article 6 of this contract, then the other party shall not be bound by this provision."* [Italics added.] In the case at bar no arbitrator has rendered a decision.

■■ Reading the three articles together, we think it clear that the arbitration provided for concerns only questions brought up through the Grievance Procedure; that Article VI sets forth the mechanics, not the scope, of the arbitration, the scope being set forth in Article V; and that a breach of Article VII is not within the scope of Article V. Moreover, the Union, although it made some objection to the employer's rescheduling of work on the Saturdays following the holidays, did not request the designation

Plant Manager or other representative designated by management for the purpose. If no mutually satisfactory adjustment is reached by this means, or in any event within seven (7) days after the submission of the issue in writing as provided above, then either party shall have the right to refer the matter to arbitration as herein provided.

"Article VI—Arbitration

"(a) The Arbitrator shall be designated by the New York State Board of Mediation upon the written request of either the Employer or the Union.

"(b) The Arbitrator shall consider each case solely on its merits and this contract shall constitute the basis upon which the decision shall be rendered. The Arbitrator shall have no power to alter, amend, revoke or suspend any of the provisions of this contract.

"(c) The decision of the Arbitrator shall be binding upon both parties for the duration of the contract.

"(d) Should any party fail, upon written notice, to appear before the Arbitrator in any matter submitted for arbitration as herein provided, the Arbitrator may proceed with the hearing, and render his decision upon the testimony and evidence presented, which decision shall be binding and shall have the same force and effect as if both parties were present.

"(e) The Arbitrator's decision shall be based only on evidence presented to him in the presence of both parties or otherwise made available to both parties.

"Article VII—No-Strikes

"(a) There shall be no strike, boycott, interruption of work, stoppage, temporary walk-out or lock-out for any reason during the terms of this contract except that if either party shall fail to abide by the decision of the Arbitrator, after receipt of such decision, under Article 6 of this contract, then the other party shall not be bound by this provision.

"(b) The parties agree as part of the consideration of this agreement that neither the International Union, the Local Union, or any of its officers, agents or members, shall be liable for damages for unauthorized stoppage, strikes, intentional slowdowns or suspensions of work if:

"(a) The Union gives written notice to the Company within twenty-four (24) hours of such action, copies of which shall be posted immediately by the Union on the bulletin board that it has not authorized the stoppage, strike, slowdown or suspension of work, and

"(b) if the Union further cooperates with the Company in getting the employees to return and remain at work.

"It is recognized that the Company has the right to take disciplinary action, including discharge, against any employee who engages in any unauthorized strike or work stoppage, subject to the Union's right to submit to arbitration in accordance with the agreement the question of whether or not the employee did engage in any unauthorized strike or work stoppage."

of an arbitrator, as provided in clause (a) of Article VI, but resorted to the self-help of a strike in direct violation of the "no-strikes" provision of Article VII. Under these circumstances we hold that whether Article VII has been breached by an interruption of work or a temporary walk-out should be decided by the court having jurisdiction of the action brought under 29 U.S.C.A. § 185 (a), and that the order staying the action was erroneous.

In Textile Workers Union of America v. Lincoln Mills, of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, a union had entered into a collective bargaining agreement with an employer which provided that there would be no strikes or work stoppages and that grievances would be handled pursuant to a specified procedure, the last step of which was arbitration. The employer having refused to arbitrate a grievance dispute, the union sued under § 185 to compel arbitration. The Supreme Court, relying upon the legislative history of the statute, held that the District Court properly decreed specific performance of the agreement to arbitrate the grievance dispute. Mr. Justice Douglas' opinion states at page 455 of 353 U.S., at page 917 of 77 S.Ct.:

"* * * plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation [§ 185] does more than

confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way."

Even in the absence of a specific no-strike clause, it has been held that resorting to a strike instead of utilizing the contractual arbitration machinery prevents a union from claiming that the strike must be arbitrated.[3] Where the no-strike clause is as specific as in the case at bar, it seems clear that the parties intended the grievance-arbitration procedure to supplant strikes as a means of resolving industrial disputes, but did not intend to subject alleged breaches of the no-strike clause to arbitration when a strike was resorted to before making any attempt to utilize the grievance-arbitration procedure.

Support for this conclusion is to be found in Markel Electric Products, Inc. v. United Electrical, Radio & Machine Workers, 2 Cir., 202 F.2d 435, 437, which held that the alleged breach of the no-strike provision was not "within the scope" of an arbitration clause which we read as at least as broad as the one now before us. Our conclusion also accords with decisions in a number of other circuits.[4]

The Union's brief relies almost exclusively on this court's decision in Signal-

3. W. L. Mead, Inc. v. International Brotherhood of Teamsters, D.C.D.Mass., 129 F.Supp. 313, 315, affirmed 1 Cir., 230 F. 2d 576; Gay's Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 404, D.C.D.Mass., 169 F.Supp. 834.

4. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 25 v. W. L. Mead, Inc., 1 Cir., 230 F.2d 576; Lodge No. 12, Dist. No. 37, I.A.M. v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, 471, certiorari denied, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110; International Union United Auto Aircraft v. Benton Harbor Malleable Industries, 6 Cir., 242 F.2d

536; Hoover Motor Express Co. v. Teamsters, Chauffeurs, Helpers and Taxicab Drivers Local Union No. 327, 6 Cir., 217 F.2d 49; Cuneo Press, Inc. v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 235 F. 2d 108. Also in accord are two decisions of the Fourth Circuit which were disapproved by this court in Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers, 2 Cir., 235 F.2d 298, certiorari denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428, discussed infra. See United Electrical, Radio and Machine Workers v. Miller Metal Products, Inc., 4 Cir., 215 F.2d 221; International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33.

Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers, 2 Cir., 235 F.2d 298, certiorari denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428. It should be noted, however, that Signal-Stat does not purport to overrule this court's earlier decision in Markel, but merely distinguished that case on the ground that the arbitration provision in Signal-Stat was broader. We think Signal-Stat distinguishable from the case at bar. There a dispute arose between the plaintiff employer and the defendant union concerning the discharge of two employees. The plaintiff's employees went on strike until it was eventually agreed that all employees, except the two discharged by the company, would return to work and the dispute over the discharged employees would. be settled by arbitration. The plaintiff then brought its action for damages, charging a violation of the no-strike clause. That clause did not have the significant exception contained in Drake's to the effect that a strike was permissible only if the other party had failed to abide by the decision of the Arbitrator after receipt of such decision. Moreover there, unlike the case at bar, the parties had already agreed to end the strike and to arbitrate the dispute which was the cause of the strike before the plaintiff brought suit. While Signal-Stat has frequently been cited and followed for other rules there enunciated,[5] our research reveals only two District Court cases in which it was relied upon to hold that an alleged breach of a no-strike clause is an arbitrable issue,[6] and only one other in which that part of the Signal-Stat opinion was cited with approval,[7] although several courts, in post Signal-Stat cases, have followed Markel.[8]

For the foregoing reasons we think it was error to stay the action. The order is reversed.

---

5. E. g., Judge Learned Hand's opinion in Council of Western Electric Technical Employees—National v. Western Electric Co., 2 Cir., 238 F.2d 892, 895.

6. Tenney Engineering, Inc. v. United Electrical, Radio and Machine Workers of America, Local 437, D.C.D.N.J., 174 F. Supp. 878; Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, United Rubber Cork, Linoleum and Plastic Workers, D.C.D.Conn., 167 F.Supp. 817.

7. Butte Miners' Union No. 1 of International Union of Mine, Mill and Smelter Workers v. Anaconda Co., D.C.D.Mont., 159 F.Supp. 431.

8. Lodge No. 12, Dist. No. 37, I. A. M. v. Cameron Iron Works, Inc., 5 Cir., supra note 4; International Union, United Auto Aircraft v. Benton Harbor Malleable Industries, 6 Cir., supra note 4; Gay's Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Local No. 404, D.C.D.Mass., 169 F.Supp. 834; Structural Steel & Ornamental Iron Ass'n v. Shopmens Local Union No. 545, D.C. D.N.J., 172 F.Supp. 354. The conflict between Structural Steel, supra, and Tenney Engineering, supra note 6, has not yet been resolved by the Third Circuit.