**YALE & TOWNE MANUFACTURING COMPANY**

v.

**LOCAL LODGE NO. 1717, INTERNATIONAL ASSOCIATION OF MACHINISTS, District Lodge No. 1, International Association of Machinists, and the Grand Lodge of the International Association of Machinists.**

Civ. A. No. 27796.

United States District Court
E. D. Pennsylvania.
May 18, 1961.

---

John F. E. Hippel and Robert W. Lees, of Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

Richard Kirschner and Richard H. Markowitz, of Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendant.

LORD, District Judge.

Plaintiff instituted this action on March 4, 1960 against the defendants for breach of the terms of a collective bargaining agreement. Section 301, Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. Plaintiff specifically contends that Local 1717 instigated a work stoppage in violation of the "no-strike" provision contained in Article XXVIII of the collective bargaining agreement. Defendants filed an answer wherein they denied these allegations.

On January 4, 1961, defendants filed this Motion to Stay the entire action until plaintiff has first processed its claim through the grievance and arbitration procedure established in the agreement itself. The real question is: Does the agreement contemplate submission to arbitration of *all disputes* including an alleged breach of the "no-strike" clause?

Article XXVIII contains the strike and lockout provisions of the agreement. See Appendix A. It provides, in part:

"28.0 The Union will not call or sanction any strike, concerted stoppage or concerted slowdown during the term of this Agreement. * * *

"28.1 Should a strike * * * other than * * * permitted by Section 28.0 hereof occur * * * the Union will * * * *immediately issue instructions to employees to return to work pending disposition of any grievance or dispute which is filed in connection therewith.*" (Emphasis supplied.)

Article XXIV of the Agreement sets forth in detail the steps to be followed in the grievance procedure. See Appendix B. Section 24.0 of this Article specifically states:

" * * * *either* party may invoke the grievance procedure in the consideration of *any* difference between the Company and an employee or group of employees involving the interpretation or application of the provisions of this Agreement. * * * " (Emphasis supplied.)

Section 24.7 of the same Article provides:

"The grievance procedure and arbitration provided for herein shall constitute the *sole and exclusive* method of determination, decision, adjustment or settlement between the parties of *any and all grievances* and the grievance procedure and arbitration provided herein shall constitute the *sole and exclusive* remedy to be utilized by the parties hereto for such determination, decision, adjustment or settlement of any and all grievances." (Emphasis supplied.)

The Courts of Appeal of five circuits have specifically held that an action for

damages, pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), alleging the violation of a collective bargaining agreement by a strike unauthorized by the terms of the contract may not be stayed pending arbitration.

Drake Bakeries, Inc. v. Local 50, American B. & C. Wkrs., 2 Cir., 1961, 287 F.2d 155, 158, not only reflects the current view of the Second Circuit but is also precisely in point with the instant case. Judge Swan, after an exhaustive review of the authorities, stated:

> "* * * Where the no-strike clause is as specific as in the case at bar, it seems clear that the parties intended the grievance-arbitration procedure to supplant strikes as a means of resolving industrial disputes, but did not intend to subject alleged breaches of the no-strike clause to arbitration when a strike was resorted to before making any attempt to utilize the grievance-arbitration procedure."

The provisions of the collective bargaining agreement relating to grievance and no-strike clauses in Drake were similar in import to the language used in the agreement in the instant case. Compare Drake Bakeries, supra, footnote 2 with Appendices A and B. The Court in distinguishing Signal-Stat Corp. v. Local 475, United Electrical, R. & M. Wkrs., 2 Cir., 1956, 235 F.2d 298, relied upon by defendants, reaffirmed the view expressed in Markel Electrical Products, Inc. v. United Electrical, R. & M. Wkrs., 2 Cir., 1953, 202 F.2d 435.

The most recent case on the precise point is Vulcan-Cincinnati, Inc. v. United Steelworkers of America, 6 Cir., 1961, 289 F.2d 103. The grievance procedure established by the collective bargaining agreement in that case was preceded by an introductory scope-clause which provided: "Should differences arise * * * or should any local trouble of any kind arise in the plant, there shall be no * * * strikes * * * but the matter shall be settled * * * in the following manner * * *." The court, after citing with approval the Drake and Markel cases, supra, held that a violation of the no-strike provision was not an arbitrable issue since it was not a dispute governed by the grievance procedure. The court, in Vulcan, relied in part on International Union United Auto. Aircraft v. Benton Harbor Malleable Industries, 6 Cir., 1957, 242 F.2d 536. In Benton Harbor, the language of the collective bargaining agreement concerning arbitrability was identical to the contract provision in Vulcan. The court, in denying arbitration of the alleged violation of the no-strike clause, stated (242 F.2d at page 540):

> "Article III, paragraph 1, contains an unequivocal, unconditional obligation not to strike or engage in a work stoppage during the term of the contract. It recognizes that a 'difference' might arise between the Company and the union which, if not settled, would lead to a strike. It looks to a settlement of that difference by use of the grievance procedure, but there is nothing in that paragraph which relieves the unions of their unconditional obligation not to have a strike. The 'difference' or 'grievance' is to be arbitrated to a final conclusion, but while it is being arbitrated and regardless of how it is eventually decided and terminated, there is to be no strike. The thing to be arbitrated is the 'difference' or 'grievance,' not the right to strike or any claimed justification for the strike. There was no right to strike. The arbitration called for by this paragraph of the contract was to be used instead of a strike, not to determine whether the strike was justified after it had occurred * * *."

See Hoover Motor Express Co. v. Teamsters etc., Local 327, 6 Cir., 1954, 217 F.2d 49.

United Electrical, Radio and Machine Workers of America v. Miller Metal

Products, Inc., 4 Cir., 1954, 215 F.2d 221 represents the view of the Fourth Circuit. The Fourth Circuit is in accord with the Second and Sixth Circuits. In United Electrical the collective bargaining agreement was formulated so that the no-strike provision of the contract was placed under a section separate from the grievance and arbitration provisions. The court, applying the statutory maxim of *noscitur a sociis,* decided that the parties could have provided for the arbitration of any disputes—but that this was not done since the grievance and arbitration provisions of the agreement were enumerated separately from the provisions concerning the no-strike clause. An examination of the agreement in the instant case reveals that the provisions relating to grievances are contained in Article XXIV while the no-strike provision is contained in Article XXVIII. See International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33.

The First and Seventh Circuits have reached the same result as enumerated above but they have relied upon the "equity" of the situation rather than an analysis of the contract language. Cuneo Press, Inc. v. Kokomo Paper Handlers Union, 7 Cir., 1956, 235 F.2d 108; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 25, A. F. L. v. W. L. Mead, Inc., 1 Cir., 1956, 230 F.2d 576.

The decided cases in the Third Circuit reflect a split of authority on this precise point. In Tenney Engineering, Inc. v. United Electrical, R. & M. Wkrs., Local 437, D.C.N.J.1959, 174 F.Supp. 878, the District Court held that a violation of a no-strike clause was an arbitrable issue. The case of Structural Steel & Ornamental Iron Association of New Jersey, Inc. v. Shopmen's Local Union, etc., D.C.N.J.1959, 172 F.Supp. 354 reflects the opposite view.

Defendants assert that the present issue is affected by three recent United States Supreme Court cases: United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Navigation, 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. Enterprise Wheel & Car Corp., supra, dealt with the enforceability of an arbitrator's award in a discharge case. Warrior Navigation Co., supra, concerned arbitrability of management's right to subcontract work. American Manufacturing Co., supra, dealt with the arbitrability of an employee's grievance pursuant to a seniority clause. It is evident that none of these three recent cases considered the arbitrability of a no-strike clause in a collective bargaining agreement. Hence, they are inapposite to the present problem. Vulcan-Cincinnati, Inc. v. United Steelworkers of America, supra, expressly reached a similar conclusion and Drake Bakeries, supra, inferentially supports this view, since the latter was decided after the Supreme Court cases.

Defendants relied upon the cases of Signal-Stat Corp. v. Local 475, United Electrical, R. & M. Wkrs., supra, and Tenney Engineering, Inc. v. Local 437 United Electrical, R. & M. Wkrs., supra, to support their Motion to Stay. The Signal-Stat Corp. case is distinguishable from the instant case as stated in Drake Bakeries, supra (287 F.2d at page 159):

"* * * We think Signal-Stat distinguishable from the case at bar. * * * That clause did not have the significant exception contained in Drake's to the effect that a strike was permissible only if the other party had failed to abide by the decision of the Arbitrator after receipt of such decision. Moreover there, unlike the case at bar, the parties had already agreed to end the strike and to arbitrate the dispute which was the cause of the strike before the plaintiff brought suit. * * *"

As previously stated, the salient contract provisions in the instant case are similar to those contained in Drake. See Appendix A; compare Butte Miners' Union No. 1 of Intern. Union of Mine, Mill and Smelter Workers v. Anaconda Co., D.C.Mont.1958, 159 F.Supp. 431.

In Tenney Engineering, supra, the court stayed an action for damages pending submission of the dispute to arbitration. The court broadly construed the arbitration clause to include a purported violation of the no-strike clause. Although this Court has the utmost respect for the authority expressed in the Tenney Engineering case, it cannot subscribe to the broad scope attributed to the arbitration provision of the collective bargaining agreement.

It is clear from an examination of Article XXIV of the agreement that the parties have agreed that binding arbitration is the exclusive remedy for the settlement of grievances between the parties. Within this framework, a violation of the no-strike provision is not a grievance. Hoover Motor Express Co. v. Teamsters, etc., Local 327, supra; Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467. Accordingly, this Court is in agreement with the overwhelming authority which has decided that the alleged violation of a no-strike clause is not an arbitrable matter.

And Now, it is ordered that Defendants' Motion to Stay be and the same is hereby denied.

### APPENDIX A

#### "Article XXVIII

#### "Strike and Lockout

"28.0 The Union will not call or sanction any strike, concerted stoppage or concerted slowdown during the term of this Agreement except for (1) the Company's failure to abide by the Arbitration clause of this Agreement, or (2) the Company's failure to comply with any decision of any Arbitrator established hereunder within ten (10) working days after such decision of an Arbitrator.

"28.1 Should a strike or concerted stoppage or concerted slowdown of work by employees of the Company other than those permitted by Section 28.0 hereof occur during the term of this Agreement, the Union will, as soon as possible after receipt of written notice from the Company, immediately issue instructions to employees to return to work pending disposition of any grievance or dispute which is filed in connection therewith.

"28.2 The obligation of the Union shall be limited to the performance of the acts required by Section 28.1 and upon compliance by the Union with the provisions of Section 28.1 of this Agreement, the Union and its officers, agents and members shall have no further liability during the term of this Agreement or thereafter, for any damage suffered by the Company arising from or out of such stoppage, slowdown or strike.

"28.3 The Company will not lock out any or all of its employees during the term of this Agreement."

### APPENDIX B

#### "Article XXIV

#### "Grievance Procedure

"24.0 It is understood and agreed that either party may invoke the grievance procedure in the consideration of any difference between the Company and an employee or group of employees involving the interpretation or application of the provisions of this Agreement. Any such difference shall constitute a grievance and may be taken up in the manner hereinafter set forth. Questions involving general negotiations shall not be subject to grievance procedure.

"24.1 It is understood that the usual employee complaint shall not be considered a grievance until after the subject at issue has been brought to the attention of the foreman or person in charge of the department but without satisfactory results. All individual or group grievances arising under or in connection with the terms or provisions of this

Agreement shall be dealt with promptly in the following sequence:

## "Step I

"The aggrieved employee or group of employees shall, together, with the Department Steward of the Union, present the grievance in writing to the Foreman of the Department. A decision shall be rendered by the Foreman within two (2) working days. If not satisfactorily adjusted, the Union may within five (5) working days appeal the grievance to

## "Step II

"The dispute shall be handled by the Grievance Committee of five of the Union with the Industrial Relations Department. A decision shall be rendered within two (2) working days by the Industrial Relations Department. If not satisfactorily adjusted, the Union may within five (5) working days appeal the grievance to

## "Step III

"The dispute shall be handled by representatives of the local union and International Union with designated management representatives. A decision shall be rendered within two (2) working days.

## "Step IV

"All grievances and other disputes arising out of the terms of this Agreement, which have not been satisfactorily adjusted as hereinbefore provided, may be submitted to arbitration at the election of either party. The matter to be arbitrated shall be submitted to the Impartial Arbitrator, as follows:

"Within ten (10) days from the meeting of the Plant Grievance Committee at which the controversy failed to be satisfactorily adjusted, the party choosing to arbitrate shall give written notice to the other party setting forth specifically the nature of the dispute to be arbitrated. Within five (5) days from the receipt of said notice the matter shall be referred to the Impartial Arbitrator.

"The Impartial Arbitrators hereinafter named shall serve for the term of this Agreement. The Impartial Arbitrators selected for the purpose of this Agreement are:

"Donald A. Crawford    John B. Abersold
Eli Rock              G. Allan Dash
Hazen Hardy

"The parties shall within ten (10) working days select from the names on the arbitration list two names numbered in the order of their preference. The first name where the number on both lists agree shall then act as arbitrator for the grievances or disputes being arbitrated.

"If there is no agreement in five (5) working days on the selection of an arbitrator, as hereinabove set forth, then the remaining name on the arbitrators list shall be used as arbitrator, or the parties by mutual agreement shall submit the matter to arbitration before an impartial arbitrator to be selected in accordance with the current procedures of the American Arbitration Association.

"In any event, the arbitrator selected will be notified through and by the American Arbitration Association and the arbitration hearing will be held in accordance with the current procedures of the American Arbitration Association.

"24.2 The decision of the arbitrator shall be final and binding and shall conclusively determine the subject of the arbitration for the duration of the Agreement.

"24.3 The arbitrator shall not have the power to add to or subtract from or modify any of the terms of this Agreement or any agreements supplemental hereto.

"24.4 The arbitrator shall render his award within thirty (30) days after the close of the hearing and the parties agree to comply with any award rendered under the terms of this Agreement within ten (10) working days after such award is rendered.

"24.5 Each party shall bear its own expense with respect to the preparation and presentation of the matter to the arbitrator, and both parties shall bear

equally the expense of the arbitration proper, including the fee, if any, of the arbitrator.

"24.6 The awards or settlement of grievances shall in no case be made retroactive more than thirty (30) days prior to the date on which the grievance was first presented in written form in step one of the grievance procedure.

"24.7 The grievance procedure and arbitration provided for herein shall constitute the sole and exclusive method of determination, decision, adjustment or settlement between the parties of any and all grievances and the grievance procedure and arbitration provided herein shall constitute the sole and exclusive remedy to be utilized by the parties hereto for such determination, decision, adjustment, or settlement of any and all grievances."