299 F.2d 882
 The YALE & TOWNE MANUFACTURING COMPANY
v.
LOCAL LODGE NO. 1717, INTERNATIONAL ASSOCIATION OF
MACHINISTS, District Lodge No. 1, International Association
of Machinists, and The Grand Lodge of The International
Association of Machinists, Appellants.
 No. 13654.
 United States Court of Appeals Third Circuit.
 Argued Dec. 8, 1961.
Decided Feb. 14, 1962.
 
 Richard H. Markowitz, Philadelphia, Pa. (Wilderman, Markowitz & Kirschner, Paula R. Markowitz, Richard Kirschner, Philadelphia, Pa., on the brief), for appellants.
 Robert W. Lees, Philadelphia, Pa. (John F.E. Hippel, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., on the brief), for appellee.
 Before GOODRICH, STALEY and GANEY, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 The narrow question on this appeal is whether an employer can bring an action for damages in a district court against a union for the alleged breach of a no-strike clause, or must the claim first be submitted to arbitration where the collective bargaining agreement contains an arbitration provision.
 
 
 2
 The Yale & Towne Manufacturing Company brought an action under 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. 185(a), against Local Lodge 1717, International Association of Machinists ('union'), and its affiliate organizations, seeking damages for the alleged breach of a no-strike clause. The union filed a motion to stay the action pending arbitration of the company's claim for damages. From a denial of that motion, the union appealed.[1]
 
 
 3
 The union contends that under the collective bargaining agreement the parties intended to arbitrate the breach of any provision of the agreement, including the no-strike clause, and points to the arbitration provision whereby
 
 
 4
 'It is understood and agreed that either party may invoke the grievance procedure (n the consideration of any difference between the Company and an employee or group of employees involving the interpretation or application of the provisions of this Agreement. Any such difference shall constitute a grievance and may be taken up in the manner hereinafter set forth. Questions involving general negotiations shall not be subject to grievance procedure.'[2]
 
 
 5
 In International Telephone & Telegraph Corporation v. Local 400, Professional, Technical & Salaried Div., International Union of Electrical Workers, 286 F.2d 329, 330-331 (C.A.3, 1960), we said that
 
 
 6
 '* * * the judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under their collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement. A court cannot pass on the merits of the claim. That is the arbitrator's function. Not only is the law clear, but its application to the controlling facts here is facilitated by the guidance contained in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 584-585, 80 s.Ct. 1347, 1354, (4 L.Ed.2d 1409), where Justice Douglas said: 'In the absence of any express provisions excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."
 
 
 7
 What we said there was based on three decisions handed down by the Supreme Court in 1960,[3] and is in accord with other recent decisions of this court.[4] The company contends, however, that this proposition is not applicable here for two reasons. First, none of the cases involved breach of a no-strike clause, and secondly, the agreement to arbitrate is the quid pro quo for the union's promise not to strike, and the union cannot, therefore, after going out on strike, insist that the company's claim be submitted to arbitration.
 
 
 8
 There is divided authority among the courts that have considered the latter contention. Decisions of the United States Court of Appeals for the Second Circuit and several district court decisions support the union's position.[5] Other decisions have held that the dispute is not arbitrable.[6] We think, however, that the 1960 decisions of the Supreme Court make it clear that the alleged strike gave rise to a 'difference' between the company and the union which on its face is governed by the collective bargaining agreement.
 
 
 9
 The arbitrability of a difference depends on the particular provisions of the agreement. It is a matter of contract and what the parties intended. The arbitration provision involved here is a broad one, requiring that all differences between the company and the union be arbitrated provided only that they involve an interpretation and application of the agreement. The arbitration machinery is not limited to any particular dispute or disputes, nor is there any limitation imposed on the power of the arbitrator to make an appropriate award. The company has not called our attention to any provision in the agreement specifically excluding the difference from arbitration. The exclusion clause is vague and general, providing only that 'questions involving general negotiations shall not be subject to grievance procedure.' A claim for damages arising out of an alleged breach of a no-strike clause is not such a question, and certainly the clause does not constitute forceful evidence of an intention not to arbitrate the difference.
 
 
 10
 The union filed an answer in the district court wherein it asserted that the strike was not authorized. The only obligation imposed on the union where a strike occurs in violation of the agreement was to immediately issue instructions to the employees to return to work. The union is not under an absolute duty to prevent a strike, and the mere fact that one takes place does not necessarily make it liable to the company. It may be that the union did notify the employees in a manner contemplated by or at least one that satisfies the requirements of the agreement, or, on the other hand, factors may exist that excused it from discharging even that limited responsibility. It has also been pointed out that it may be necessary to determine whether the company, in light of the record, deliberately provoked the alleged strike. These are questions which, under the circumstances, involve the merits of the controversy, and may best be answered by examining the total employer-employee relationship as manifested through the collective bargaining agreement. In this relationship we may also find an answer to the company's contention that the strike constituted a material breach of the agreement, thereby excusing it from proceeding to arbitrate. That is made clear by what the Court said in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. at 579, 80 S.Ct. at 1351: 'The collective agreement covers the whole employment relationship. It calls into being a new common law-- the common law of a particular industry or of a particular plant.'
 
 
 11
 As the union points out in its brief, the question here is not merely to determine whether a strike took place. Resolution of that question may well raise collateral problems involving past practices and recognized responsibilities of the parties insofar as a work stoppage is concerned. That, in turn, may require an examination of the bargaining history and grievance settlements, which admittedly we cannot do. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 283 F.2d 93 (C.A.3, 1960). There is also the further fact that the strike involved an alleged refusal by the company to rerank certain jobs held by union members. In this regard, we would be called on to examine ceratin provisions of the agreement and the incentive rate system as well as the overall practice and understanding of the parties in settling disputes concerning so-called 'tight' or 'loose' rates.
 
 
 12
 The result reached here is supported by two decisions of this court. In International Molders Union v. Susquehanna Casting Co., supra, we held arbitrable the discharge of thirty employees because of their alleged breach of a no-strike clause. The company brought an action for damages because of an alleged breach of a no-strike clause in Tenney Engineering, Inc. v. United Electrical Workers of America, 207 F.2d 450 (C.A.3, 1953). After holding that the United States Arbitration Act, 9 U.S.C. 1 et seq., was applicable under the cirumstances, we remanded in order to permit the district court to determine if the breach was arbitrable. Thereafter, the district court ordered arbitration. Tenney Engineering, Inc. v. United Electrical Workers of America, D.C., 174 F.Supp. 878 (1959).
 
 
 13
 The company cites a number of cases that are clearly inapposite. In Sinclair Refining Co. v. Atkinson, 290 F.2d 312 (C.A.7, 1961), cert. geanted, December 11, 1961, 82 S.Ct. 378, 82 S.Ct. 376, the arbitration provision was a narrow one, being limited to differences 'regarding wages, hours, or working conditions.' The same was true in International Union, United Furniture Workers of America v. Colonial Hardwood Flooring Co., 168 F.2d 33 (C.A.4, 1948), where arbitration was limited to 'a grievance of any employee or a joint grievance of any group of employees, in connection with hours, or other conditions of employement.'[7] Here, of course, the arbitration clause was much broader. The collective bargaining agreement in Hoover Motor Express Co. v. Teamsters Local Union 327, 217 F.2d 49 (C.A.6, 1954), did not contain an arbitration clause. Under the arbitration provisions that were before the court in Vulcan-Cincinnati, Inc. v. United Steelworkers of America, 289 F.2d 103 (C.A.6, 1961); International Union, United Automobile Workers v. Benton Harbor Malleable Industries, 242 F.2d 536 (C.A.6), cert. denied, 355 U.S. 814, 75 S.Ct. 15, 2 L.Ed.2d 31 (1957); and Cuneo Press, Inc. v. Kokomo Paper Handlers' Union 34, 235 F.2d 108 (C.A.7, 1956), only employees could file a grievance and invoke arbitration. Here, either the company or union may initiate arbitration. The only question before the court in Lodge 12, District 37, International Assn. of Machinists v. Cameron Iron Workers, Inc., 257 F.2d 467 (C.A.5), cert. denied, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110 (1958), was whether the discharge of certain employees was arbitrable. In United Electrical Workers of America v. Miller Metal Products, Inc., 215 F.2d 221 (C.A.4, 1954), the court found that the United States Arbitration Act, 9 U.S.C. 1 et seq., was inapplicable since the controversy arose out of a contract of employment and that it was without jurisdiction to order arbitration. Any discussion relating to the problem before us was, therefore, dictum. International Brotherhood of Teamsters, Local 25 v. W. L. Mead, Inc., 230 F.2d 576 (C.A.1, 1956), is no help, for the question involved here was not before the court nor was it discussed.
 
 
 14
 The judgment of the district court will be reversed with directions that defendant's motion for a stay be granted.
 
 
 15
 GANEY, Circuit Judge (dissenting).
 
 
 16
 The question here involved is whether or not the right to strike, Section 28.0 under Article XXVIII, of the Collective Bargaining Agreement between The Yale & Towne Manufacturing Company and the three Union defendants, is within the purview of the Grievance Procedure, as set forth in Article XXIV thereof.
 
 
 17
 The narrow question which a court may consder in a collective bargaining agreement concerning an arbitration provision is confined to ascertaining whether the parties seeking arbitration are making a claim which, on its face, is governed by the contract. United Steelworkers workers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403.
 
 
 18
 Section 28.0, Article XXVIII, under the Collective Bargaining Argeement between the parties, provides, in unequivocal terms, that the Union will not call or sanction a strike.
 
 
 19
 Section 24.0, Article XXIV, as set forth in the majority opinion, provides, inter alia:
 
 
 20
 '* * * Any such difference shall constitute a grievance and be taken up in the manner hereinafter set forth.'
 
 
 21
 The balance of the Article provides the procedural methods to be used, entitled 'Steps' wherein the issues shall be brought to the attention of the foreman and they shall be reduced to writing and provides various procedures until finally they reach representatives of management and the international union, and if they are not there settled, resort is to be had to arbitration. Step IV covers 'all grievances' to be arbitrated.
 
 
 22
 It is submitted that the no-strke clause is not such a difference as to be within this procedure, which is obviously applicable to disputes occuring between labor and management. It is essential, as I view it, under the Agreement, that the 'Grievance' or 'Difference' is to be arbitrated, not the right to strike which is clearly prohibitive and needs no arbitrator to decide.
 
 
 23
 There can be no question here but that the difference between the company and the union is a matter which is arbitrable because it involves an employee-employer dispute concerning the demand of a group of employees that their job be upgraded, which would have meant an increase in the hourly rate of pay, and this is purely within the terms of the arbitration agreement. United Steelworkers of America v. American Manufacturing Co., supra; United Steelworkers of America v. Warriors & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1353, 4 L.Ed.2d 1424.
 
 
 24
 In the American Manufacturing Co. case, supra, the matter concerned a grievance as to whether an employee was entitled to return to his job by virtue of the seniority provision of the collective bargaining agreement. In the Warrior & Gulf Navigation Co. case, supra, the court held that the contracting out of repairs and maintenance work, as well as construction work, was not strictly a function of management, but rather that it was a matter for arbitration under the agreement. In the Enterprise case, supra, the question concerned whether or not there should be a reinstatement of employees with back pay under the provision of the arbitration agreement.
 
 
 25
 None of these cases, it will be observed, are apposite to the problem posed here for determination.
 
 
 26
 Likewise, the cases before this circuit, cited by the majority, such as Radio Corporation of America v. Association of Professional Engineering Personnel, 3 Cir., 291 F.2d 105, concerned itself with a matter of merit increases on the part of employees; International Telephone & Telegraph Co. v. Local 400, Professional, Technical & Salaried Division, International Union of Electrical Workers, 3 Cir., 290 F.2d 581, concerned itself with whether or not the retirement of four employees of the company constituted, in effect, a discharge within the meaning of the collective bargaining agreement; in International Molders Union v. Susquehanna Casting Co., 3 Cir., 283 F.2d 80, the union applied for an order to arbitrate the question of whether, under the contract, the right 'to discharge for proper cause' was vested in the company and, here again, the court said this is a matter for arbitration. In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 283 F.2d 93, the question concerned itself with whether or not a union member had been taken out of a bargaining unit by becoming a suprevisory employee and the court held here that this, likewise, was a function of the arbitrator. In Tenney Engineering, Inc. v. United Electrical, R. & M. Wkrs., 3 Cir., 207 F.2d 450, the point was not decided by this court but remanded back to the district court which shall be adverted to later.
 
 
 27
 In none of these cases was the question posed here, whether or not a specific provision containing a no-strike clause of a collective bargaining agreement, is covered by the grievance procedure set out in the contract here involved.
 
 
 28
 However, there is a sharp difference of opinion in the various circuits of the country, some holding the action should not be stayed pending arbitration and about an equal number holding that it should. In the Second Circuit in Drake Bakeries v. Local 50, American Bakery and Confectionery Workers, 287 F.2d 155, 158, it was held that the no-strike clause was not within the orbit of the grievance procedure but, upon rehearing, 2 Cir., 294 F.2d 399, the court was sharply divided with three judges affirming and three judges dissenting, Judges Lumbard, Moore and Friendly, and, under the circumstances, the district court was affirmed in holding that the no-strike clause was within the orbit of the agreement. However, another recent case on the precise point, Vulcan-Cincinnati, Inc. v. United Steelworkers of America, 6 Cir., 289 F.2d 103, where the court, after a review of the authorities, relied on International Union U.A.A. v. Benton Harbor Malleable Industries, 6 Cir., 242 F.2d 536, wherein the court, at p. 540, held:
 
 
 29
 '* * * The 'difference' or 'grievance' is to be arbitrated to a final conclusion, but while it is being arbitrated and regardless of how it is eventually decided and terminated, there is to be no strike. The thing to be arbitrated is the 'difference' or 'grievance,' not the right to strike or any claimed justification for the strike. There was no right to strike. The arbitration called for by this paragraph of the contract was to be used instead of a strike, not to determine whether the strike was justified after it had occurred. * * *'
 
 
 30
 To the same effect is Hoover Motor Express Co. v. Teamsters Local 327, 6 Cir., 217 F.2d 49; United Electrical, R. & M. Wkrs. v. Miller Metal Products, Inc., 4 Cir., 215 F.2d 221.
 
 
 31
 In this circuit, Tenney Engineering, Inc. v. United Electrical, R. & M. Wkrs., Local 437, D.C. 174 F.Supp. 878, the district court held that a violation of a no-strike clause was an arbitrable issue. However, in this case, the union alleged the strike to be a wildcat affair without union responsibility which does not obtain in this case. The opposite view was reflected in Structural Steel & Ornamental Ass'n v. Shopmen's Local Union, D.C. 172 F.Supp. 354.
 
 
 32
 We must here decide what the intendment of the parties was to this agreement. Can we construe this agreement, or more particularly, the articles and section concerned, as encompassed within the orbit of the grievance procedure, that the parties meant and said it embraced a violation of an express promise not to strike? Has it within its purview the connotation that the plant would be struck, the industry dislocated with its consequent hardship to the wageearner and then this act was to constitute a grievance which was to be later arbitrated, through the procedures set forth?
 
 
 33
 While the United Steelworkers of America v. Warrior & Gulf Navigation, supra, among other things, held that in the absence of an express provision excluding a grievance for arbitration, only the most forceful evidence of a purpose to exclude it can prevail, it is to be remembered that this principle is set forth in the context of the factual situation which was presented before the court which, as above has been indicated, concerned the contracting out of repair and maintenance work and whether or not this was a function of management, which the court held was arbitrable.
 
 
 34
 Here it is true that either party had recourse to arbitration and so either the company or the union might have done so. However, the record discloses that the company discussed this dispute with the Chief Day Steward of the union and requested the men to return to work and upon their refusal so to do, they were discharged and immediately the picket line was thrown around the plant and the strike came into being.
 
 
 35
 Whatever the merits of the case are, we are not herewith concerned, but, nevertheless, the fact remains that the affirmative act of violating the agreement not to strike was taken by the union. Courts in some circuits have held that this conduct on the part of the union, relying on the equity of the situation, denies them relief. Cuneo Press, Inc. v. Kokomo Paper Handlers Union, 7 Cir., 235 F.2d 108; International Brotherhood of Teamsters v. W. L. Mead, Inc., 1 Cir., 230 F.2d 576.
 
 
 36
 To construe this collective bargaining agreement, as the majority has, it is submitted is somewhat like turning back the clock to the turn of the century when industrial strife was the rule and the long road plod by both union and management for better industrial relations through the National Labor Relations Act, 29 U.S.C.A. 141 etc., down through its implementation by the Labor Management Relations Act of 1947, 29 U.S.C.A. 185, commonly called the Taft-Hartley Act, in the prevention of strikes, then has been in vain. For, it is submitted, that if this view is to be upheld, only chaos can result in this industry, for if a strike may be called in violation of a no-strike provision, certainly any dispute obtaining between management and the union, of a lesser nature, such as alleged unlawful union activities or the discharge of an individual by the company, can prompt a stike and arbitration can only be had after the strike is underway. The history of arbitration has ofttimes been a long and tedious one and during this period a struck plant causes great dislocation to the industry and consequent hardship to the wage-earner.
 
 
 37
 The better construction, I submit, is rather than have events come full cycle, to construe the words and phrases of this agreeement so that the no-strike provision shall not be within the orbit of the grievance procedure and thus be in conformity with an enlightened labor and management federal policy.
 
 
 38
 I would affirm the judgment of the lower court.
 
 
 
 [1]
 Jurisdiction is based on 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. 185(a). General Electric Co. v. Local 205, United Electrical Workers of America, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957)
 
 
 [2]
 Article XXIV, Clause 24.0
 
 
 [3]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [4]
 Harris Structural Steel Co. v. United Steelworkers of America, AFL-CIO, Local 3682, 298 F.2d 363 (C.A.3, 1962); Radio Corp. of America v. Association of Professional Engineering Personnel, 291 F.2d 105 (C.A.3, 1961); International Telephone & Telegraph Corp. v. Local 400, Professional, Technical and Salaried Div., International Union of Electrical Workers, 290 F.2d 581 (C.A.3, 1961); International Molders Union v. Susquehanna Casting Co., 283 F.2d 80 (C.A.3, 1960); Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 283 F.2d 93 (C.A.3, 1960)
 
 
 [5]
 Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 294 F.2d 399 (C.A.2, 1961), cert. granted Jan. 22, 1962, 82 S.Ct. 840; Signal-Stat Corp. v. Local 475, United Electrical Workers, 235 F.2d 298 (C.A.2, 1956), cert. denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); Tenney Engineering Co. v. Electrical Workers, Local 437, 174 F.Supp. 878 (D.C.N.J.1959); Armstrong-Norwalk Rubber Corp. v. Local 283, United Rubber Workers, 167 F.Supp. 817 (D.Conn.1958); Pennsylvania Greyhound Lines v. Amalgamated Assn. of Street Employees, 98 F.Supp. 789 (W.D.Pa.1951), reversed on other grounds, 193 F.2d 327 (C.A.3, 1952); Lewittes & Sons v. United Furniture Workers of America, 95 F.Supp. 851 (S.D.N.Y.1951). See Hudson Wholesale Grocery Co. v. Allied Trades Council, 3 N.J.Super. 327, 65 A.2d 557 (1949)
 
 
 [6]
 Structural Steel & Ornamental Iron Ass'n of New Jersey, Inc. v. Shopmens Local Union 545, 172 F.Supp. 354 (D.N.J.1959); Harris Hub Bed & Spring Co. v. United Electrical Workers of America, 121 F.Supp. 40 (M.D.Pa.1954); Metal Polishers International Union Local 90 v. Rubin, 85 F.Supp. 363 (E.D.Pa.1949)
 
 
 [7]
 The provisions of the arbitration clause can be found in Lewittes & Sons v. United Furniture Workers of America, 95 F.Supp. 851, 853 (S.D.N.Y.1951)