**FIFTH AVENUE COACH LINES, INC.,**
Surface Transit, Inc., Plaintiffs,

v.

**TRANSPORT WORKERS OF AMERICA, LOCAL 100,** and Transport Workers of America, affiliated with the American Federation of Labor-Congress of Industrial Organizations, and Michael J. Quill, Defendants.

United States District Court
S. D. New York.
Oct. 22, 1964.

Saxe, Bacon & O'Shea, New York City, for plaintiffs.

O'Donnell & Schwartz, New York City, John F. O'Donnell, Walter N. Kaufman, New York City, of counsel, for defendants.

BONSAL, District Judge.

Defendants Transport Workers of America, Local 100, and Transport Workers of America (Union) move for an order pursuant to Section 3 of the Arbitration Act (9 U.S.C. § 3) for a stay of proceedings pending arbitration in accordance with the collective bargaining agreements between plaintiffs and said defendants. Defendant Michael J. Quill (Quill) moves for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss this action as against him for failure to state a claim on which relief can be granted.

Plaintiffs Fifth Avenue Coach Lines, Inc. (Fifth) and Surface Transit, Inc. (Surface) owned and operated bus routes in Manhattan and the Bronx, and defendants Union represented plaintiffs' employees. On March 1, 1962 Union went on strike, and the strike continued for 20 days, when the City of New York acquired, by condemnation, all of plaintiffs' New York City operations. On March 9, 1962 plaintiffs instituted this action against Union pursuant to Section 301 (a) of the Taft-Hartley Act (29 U.S.C. § 185(a)) for damages by reason of Union's alleged breach of its collective bargaining agreements with plaintiffs, and against Quill as an individual for allegedly having instigated the breach of the collective bargaining agreements.

On March 19, 1962, after the commencement of this action, Surface demanded that the Impartial Chairman appointed by the parties to arbitrate contract disputes between them order Union to return to work, which demand was later withdrawn by Surface.[1]

It appears that shortly before the strike the plaintiff companies were acquired by a group under the leadership of. Harry Weinberg. The new management immediately undertook negotiations with New York City officials seeking an increase in the fare from 15¢ to 20¢, and indicating that drastic curtailment of the service would be required if such an increase was not granted. The increase was not forthcoming, and the new management announced plans for curtailment of service and reduction of the labor force. The Union responded with a strike, and after the strike had continued for about 20 days, the City condemned plaintiffs' property and took over the operation of their bus lines.

Plaintiffs allege in their complaint that the strike was a violation of their collective bargaining agreements with Union, and seek damages by reason of the alleged breach. Union contends that if the strike was a breach of the collective bargaining agreements, it was a matter for arbitration in accordance with said agreements, and moves that this action be stayed pending arbitration. Therefore, the issue presented is whether the strike was a matter subject to arbitration under the collective bargaining agreements.

---

1. In relevant part, the demand reads as follows:

"* * * we hereby formally demand that you forthwith order the Unions and employees to return to work on the Surface Lines and forthwith cease and desist from their illegal strike activity which is in violation of their contracts and the law * * *"

\* \* \* \* \*

"We incorporate by reference in this demand the collective bargaining agreements between Surface and the Unions with particular reference to the no-strike and grievance procedures."

*Agreement Between Fifth and Union*

Section 2 entitled "Declaration of Purposes" provides:

"The purposes of this Agreement are to assure adequate and dependable local transit service to the public without interruption or impairment by labor disputes or controversies; to provide a procedure for the adjustment of individual grievances, and a procedure for the adjustment of all other questions or disputes arising hereunder, including final resort to an Impartial Chairman if necessary; * * *."

Section 13 provides:

"[N]either the Union nor the employees shall participate in any stoppage or interruption or interference in the normal operations of the Company, nor in any strike against the Company, * * * Nor shall the Company lock out such employees for any reason during the term hereof."

Section 17 provides for a grievance procedure, and a grievance is defined to be:

"a controversy between the Company, on the one hand, and the Union * * *, on the other hand, arising out of the interpretation and application of the provisions of this Agreement * * *."

Section 17 details the procedure for employees' grievances and employer grievances, providing in both instances for an appeal to the Impartial Chairman for final resolution.

*Agreement Between Surface and Union*

Unlike Fifth's agreement, the Surface agreement contains no Declaration of Purpose. Article Sixth is a no-strike, no-lockout clause, and Article Seventh establishes a grievance procedure and defines a grievance as meaning, "any dispute arising out of the interpretation and application of the provisions of the collective bargaining agreement in effect between parties". Paragraph 2 of article Seventh provides that:

"[I]n case there is any dispute between the parties hereto arising out of the agreement or contract, then in any such case, at the written request of the party hereto desiring arbitration as herein provided, the matter shall be submitted for decision to the Impartial Chairman."

Paragraph 3 of article Seventh limits the area of arbitration by providing, "Anything herein contained to the contrary notwithstanding, there shall be no arbitration with reference to any layoffs or the necessity for layoffs * * *."

The Supreme Court, in Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), held that the issue of arbitrability is a question for the courts and is to be determined by the contract entered into by the parties. In Drake, the Court found that under the contract there involved, the issue raised by a strike in violation of the no-strike clause was an arbitrable issue. It is true that in Drake the clause extended not only to questions of interpretation or application of the contract, but to "any act or conduct or relation between the parties hereto, directly or indirectly".

In the Court's view, the clauses in the two collective bargaining agreements here involved are sufficiently broad to include arbitration of the issue raised by the strike. While Surface's agreement is not as broad as Fifth's, it would appear that by specifically excluding layoffs from the compass of the arbitration provisions, the parties intended that other matters referred to in the agreement, including strikes and lockouts, were to be included.[2] Accordingly, the Court holds that further proceedings herein should be stayed pending arbitration. Signal-Stat Corp. v. Local 475, United Electrical, Radio & Machine Workers,

2. Note Surface's March 19, 1962 demand on the Impartial Chairman, above referred to, which indicates that Surface believed the strike to constitute an arbitrable issue.

235 F.2d 298 (2d Cir. 1956); Yale & Towne Mfg. Co. v. Local Lodge No. 1717, International Association of Machinists, 299 F.2d 882 (3d Cir. 1962). The record indicates that the arbitrator or Impartial Chairman took steps on his own initiative seeking to resolve the issues which had arisen, and it would appear that he is in the best position to determine what damages, if any, the plaintiffs are entitled to by reason of the strike.

■ Also before the Court is defendant Quill's motion to dismiss the complaint against him. Quill is alleged in the complaint to have "counseled, procured, induced and caused the * * * breach of the contracts * * * and * * * the aforesaid illegal strike". Quill was the president of the Union, and the Supreme Court has held that an action under Section 301(a) of the Taft-Hartley Act lies against the Union, and that no action lies against the president of the Union. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Accordingly, defendant Quill's motion to dismiss as against him will be granted.

Settle order on notice.